1    JOHNSON BOTTINI, LLP
     Frank J. Johnson (CSB 174882)
2    Francis A. Bottini, Jr. (CSB 175783)
     655 West Broadway, Suite 1400
3    San Diego, California 92101
     Telephone: (619) 230-0063
4    Facsimile: (619) 233-5535

5    Attorneys for Plaintiff

6

7            UNITED STATES DISTRICT COURT

8            CENTRAL DISTRICT OF CALIFORNIA

9                WESTERN DIVISION

10                       CV07-03882 AHM (SHx)

11    JILL WATKINS, Derivatively On Behalf    )   Case No.
     of YAHOO! INC.,

12                  Plaintiff,

13        vs.

14    TERRY S. SEMEL,
     SUSAN L. DECKER,
15    ARTHUR H. KERN,
     JERRY YANG,
16    ERIC HIPPEAU,
     EDWARD R. KOZEL,
17    ROBERT A. KOTICK,
     ROY J. BOSTOCK,
18    GARY L. WILSON,
     RONALD W. BURKLE, and
19    VYOMESH JOSHI,

20                Defendants,

21        -and-

22    YAHOO! INC., a Delaware corporation,

23             Nominal Defendant.

24

25

26

27

28

Case No.

**DERIVATIVE COMPLAINT FOR**

1. **VIOLATION OF § 10(B) OF THE 1934 ACT;**
2. **INSIDER SELLING CAL. CORP. CODE §25402;**
3. **INSIDER SELLING CAL. CORP. CODE §25403**
4. **BREACH OF FIDUCIARY DUTY – FINANCIAL REPORTING;**
5. **BREACH OF FIDUCIARY DUTY – INSIDER SELLING;**
6. **BREACH OF FIDUCIARY DUTY; and**
7. **UNJUST ENRICHMENT;**

**DEMAND FOR JURY TRIAL**

FILED
CLERK, U.S. DISTRICT COURT
JUN 14 2007
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

DOCKETED ON CM
JUN 2 2007
BY         067

1    Plaintiff, Jill Watkins, derivatively on behalf of Yahoo! Inc. ("Yahoo!" or the

2  "Company"), upon her personal knowledge as to those allegations concerning

3  herself and based upon information and belief, based upon, amongst other things,

4  the investigations made by their attorneys, allege the following:

5  <u>**NATURE OF THE CASE**</u>

6    1.    This lawsuit presents a classic example of improper conduct by insiders

7  who were boasting about the prospects of the Company and telling investors that the

8  Company would be repurchasing the stock because it was undervalued while they

9  were independently selling their own stock and pocketing millions of dollars. The

10  defendants' conduct has resulted in a flurry of lawsuits filed against Yahoo!

11  including *Draucker Development and True Communication Inc v. Yahoo! Inc et al.*,

12  2:06-cv-2737 CAS (FMOx), *Checkmate Strategic Group Inc v. Yahoo Inc et al.*,

13  2:05-cv-04588-CAS (FMOx) and *Ellen Rosenthal Brodsky v. Yahoo! Inc. et al,*

14  2:07-cv-03125-CAS (FMOx) ("Related Cases").

15    2.    As stated in the Plaintiff's verification attached to this Complaint,

16  Plaintiff brings this action as a shareholder of Yahoo! as a derivative action on

17  behalf of the Company against certain of its officers and directors "in the hope of

18  improving the Company and recovering damages for the Company caused by

19  defendants' conduct." More specifically, Plaintiff brings this action to remedy

20  defendants' violations of federal and state law, including fraud, breaches of

21  fiduciary duties, waste of corporate assets, unjust enrichment and violations of the

22  California Corporations Code that occurred between April 2004 and the present (the

23  "Relevant Period").

24  <u>**BRIEF SUMMARY OF ALLEGATIONS**</u>

25    3.    Yahoo! is a leading global Internet brand and one of the most trafficked

26  Internet destinations worldwide. The Company offers a variety of online properties

27  and services to Internet users that help them search the worldwide Web from their

28  own computers, essentially for "free." Yahoo! obtains a substantial portion of its

**SHAREHOLDER DERIVATIVE COMPLAINT**

1   revenues from charging businesses for the various tools and marketing products it

2   offers. Phenomenal growth in online traffic over the past five years significantly

3   increased Yahoo!'s reported advertising revenues and permitted the Company to

4   report record revenues and to double its reported earnings each year:

| FISCAL YEAR | REVENUE DERIVED FROM MARKETING/ADVERTISING | NET REVENUES | EARNINGS/ (LOSS) |
|---|---|---|---|
| 2001 | $571 M – 79% | $717 M | ($93 M) |
| 2002 | $651.6 M – 68% | $953 M | $43 M |
| 2003 | $1.3 B – 81% | $1.6 B | $238 M |
| 2004 | $3.1 B – 87% | $3.6 B | $840 M |
| 2005 | $4.6 B – 87% | $5.3 B | $1.9 B |

9      4.     During the Relevant Period, defendants caused or allowed Yahoo! to

10   make improper statements concerning Yahoo!'s sales growth, record reported

11   revenues and earnings and strong business fundamentals, which the Company stated

12   would provide further stability and growth. These statements precipitated an

13   increase in the Company's value to over $43 per share on January 6, 2006.

14      5.     The Company's Relevant Period statements, however, improperly

15   omitted material adverse facts concerning operational deficiencies in the Company's

16   ad technology. Moreover, under defendants' direction, the Company improperly

17   concealed adverse facts suggesting that Yahoo! was rapidly losing market share to

18   Google and other search engines and Web destinations. These negative material

19   facts suggested that the Company would suffer declines in its revenues, earnings and

20   value. These facts should have been accurately reported in the Company's Relevant

21   Period statements to maintain Yahoo!'s valuable business reputation.

22      6.     In May 2006, Yahoo! was sued in this District on behalf of Yahoo!'s

23   advertising customers based on the Company's alleged failure to provide the

24   "targeted advertising" it was charging premium advertising rates for. Plaintiffs

25   alleged Yahoo! was charging premium advertising rates for "sponsored searches"

26   and "content match" advertising but was instead placing their ads at random without

27   any link to Internet users' search terms and without any "content matching."

28

**SHAREHOLDER DERIVATIVE COMPLAINT**

1 Instead, plaintiffs alleged, Yahoo! placed their ads on Web sites that users either
2 found by accident or that were completely untargeted, while Yahoo! promoted its
3 "sponsored search" and "content match" products as "state of the art in targeted
4 Internet advertising" and claimed Yahoo!'s targeted advertising was the "foundation
5 on which Yahoo ha[d] built its Internet advertising empire."

6      7.    On July 19, 2006, the Company's stock price fell precipitously by 22%
7 on heavy volume after the Company announced fiscal second quarter 2006 financial
8 results that were lower than investors had been led to expect. As a result, analysts
9 downgraded Yahoo!'s stock *en masse*, erasing billions of dollars in market
10 capitalization as the Company's once valuable business reputations was irreparably
11 tarnished.

12      8.    Yahoo!'s Relevant Period statements failed to disclose and
13 misrepresented the following material adverse facts, which defendants knew,
14 consciously disregarded, were reckless and grossly negligent in not knowing or
15 should have known:

16          (a)    Yahoo! generated revenue by improperly misleading Internet
17 advertising business customers to induce these customers to buy Yahoo! advertising
18 products;

19          (b)    Yahoo! employees made improper representations regarding the
20 Company's advertising technology and products to its customers;

21          (c)    Yahoo! improperly represented the essential characteristics,
22 quality, and/or nature of competing products and commercial activities, including
23 relevance, potential click-throughs and quality;

24          (d)    Yahoo!'s advertising technology was operationally defective,
25 causing its own advertising offerings to substantially under-perform those of its
26 rivals;

27          (e)    Whereas Yahoo!'s rivals were paying high-traffic vendors to
28 route traffic through their Web sites, Yahoo! was charging large vendors for access

1 and was dependent on that revenue to make its revenue targets, making Yahoo!'s

2 Web site a less desirable location for vendors to drive traffic to; and

3        (f)    Yahoo! was losing market share to Google and other Internet

4 search providers.

5 ### JURISDICTION AND VENUE

6     9.    The claims asserted herein arise under §10(b) of the Securities

7 Exchange Act of 1934 ("1934 Act"), 15 U.S.C. §§78j(b), and Rule 10b-5.

8 Jurisdiction is conferred by §27 of the 1934 Act, 15 U.S.C. §78aa.

9     10.    Venue is proper in this District because Yahoo!'s Overture subsidiary

10 is located in this District and was substantially involved in the fraudulent advertising

11 sales scheme alleged herein. Additionally, the allegations in this case are

12 substantially related to the claims being prosecuted in the Related Cases pending in

13 this district.

14 ### THE PARTIES

15     11.    Plaintiff is, and was at times relevant hereto, an owner and holder of

16 Yahoo! common stock.

17     12.    Nominal defendant Yahoo! is a corporation organized and existing

18 under the laws of the state of Delaware with its headquarters located at 701 First

19 Avenue, Sunnyvale, California 94089. Yahoo! is a leading global Internet brand

20 and one of the most trafficked Internet destinations worldwide.

21     13.    Defendant Terry S. Semel ("Semel") is Yahoo!'s Chairman and Chief

22 Executive Officer and has been at all relevant times. Because of Semel's positions,

23 he knew, consciously disregarded, was reckless and grossly negligent in not

24 knowing or should have known the adverse, non-public information about the

25 business of Yahoo! including its finances, markets and present and future business

26 prospects, via access to internal corporate documents, conversations and

27 connections with other corporate officers and employees, attendance at Board and

28 management meetings and committees thereof, as well as reports and other

-4-

information provided to him in connection therewith. During the Relevant Period, Semel participated in the issuance of false and/or misleading statements, including the preparation of the improper press releases and Securities and Exchange Commission ("SEC") filings. Yahoo! paid Semel the following compensation:

| Year | Salary | Restricted Stock Awards | Stock Awards | Option Awards | Options | Misc. |
|------|--------|-------------------------|--------------|---------------|---------|-------|
| 2006 | $250,001 | - | $2,895,833 | $36,678,679 | - | $125 |
| 2005 | $600,000 | $8,687,500 | - | - | 3,300,000 | $1,980 |
| 2004 | $600,000 | - | - | - | 7,200,000 | $1,980 |

During the Relevant Period, Semel sold 15,966,786 shares of Yahoo! stock for proceeds of $584,447,826.76 while in possession of material non-public information.

14. Defendant Susan L. Decker ("Decker") is Yahoo!'s Head of Advertisers and Publisher Group, since January 2007, and Chief Financial Officer, since June 2000. Because of Decker's positions, she knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Yahoo! including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings, as well as reports and other information provided to her in connection therewith. During the Relevant Period, Decker participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings. Yahoo! paid Decker the following compensation:

| Year | Salary | Bonus | Restricted Stock Awards | Stock Awards | Option Awards | Non-Equity Incentive Plan | Options | Misc. |
|------|--------|-------|-------------------------|--------------|---------------|---------------------------|---------|-------|
| 2006 | $500,000 | - | - | $4,833,545 | $9,734,140 | $850,000 | - | $41,937 |
| 2005 | $500,000 | $1,000,000 | $7,246,500 | $7,246,500 | - | - | 675,000 | $3,800 |
| 2004 | $500,000 | $900,000 | $1,854,000 | - | - | - | 150,000 | $3,550 |
| 2003 | $500,000 | - | $1,852,200 | - | - | - | 250,000 | $3,300 |

SHAREHOLDER DERIVATIVE COMPLAINT

1  During the Relevant Period, Decker sold 2,203,333 shares of Yahoo! stock for

2  proceeds of $73,885,047.80 while in possession of material non-public information.

3       15.    Defendant Arthur H. Kern ("Kern") is a Yahoo! director and member

4  of the Audit and Compensation Committees and has been at all relevant times.

5  Because of Kern's position, he knew, consciously disregarded, was reckless and

6  grossly negligent in not knowing or should have known the adverse, non-public

7  information about the business of Yahoo! including its finances, markets and present

8  and future business prospects, via access to internal corporate documents,

9  conversations and connections with other corporate officers and employees,

10  attendance at Board meetings and committees thereof, as well as reports and other

11  information provided to him in connection therewith. During the Relevant Period,

12  Kern participated in the issuance of improper statements, including the preparation

13  of the improper press releases and SEC filings. During the Relevant Period, Kern

14  sold 939,454 shares of Yahoo! stock for proceeds of $33,094,136.79 while in

15  possession of material non-public information.

16       16.    Defendant Jerry Yang ("Yang") is a Yahoo! director and has been at all

17  relevant times. Yang is also one of the Company's founders and holds the position

18  of "Chief Yahoo." Because of Yang's positions, he knew, consciously disregarded,

19  was reckless and grossly negligent in not knowing or should have known the

20  adverse, non-public information about the business of Yahoo! including its finances,

21  markets and present and future business prospects, via access to internal corporate

22  documents, conversations and connections with other corporate officers and

23  employees, attendance management and at Board meetings and committees thereof,

24  as well as reports and other information provided to him in connection therewith.

25  During the Relevant Period, Yang participated in the issuance of improper

26  statements, including the preparation of the improper press releases and SEC filings.

27  During the Relevant Period, Yang sold 400,000 shares of Yahoo! stock for proceeds

28  of $14,496,261.65 while in possession of material non-public information.

-6-

SHAREHOLDER DERIVATIVE COMPLAINT

17.     Defendant Eric Hippeau ("Hippeau") is a Yahoo! director and has been at all relevant times. Because of Hippeau's position, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Yahoo! including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Hippeau participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings. During the Relevant Period, Hippeau sold 340,000 shares of Yahoo! stock for proceeds of $12,379,200 while in possession of material non-public information.

18.     Defendant Edward R. Kozel ("Kozel") is a Yahoo! director and member of the Audit Committee and has been at all relevant times. Because of Kozel's position, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Yahoo! including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Kozel participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings. During the Relevant Period, Kozel sold 120,050 shares of Yahoo! stock for proceeds of $4,464,706.28 while in possession of material non-public information.

19.     Defendant Robert A. Kotick ("Kotick") is a Yahoo! director and has been at all relevant times. Because of Kotick's position, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have

known the adverse, non-public information about the business of Yahoo! including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Kotick participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings. During the Relevant Period, Kotick sold 74,859 shares of Yahoo! stock for proceeds of $2,661,081.22 while in possession of material non-public information.

20.     Defendant Roy J. Bostock ("Bostock") is a Yahoo! director and member of the Compensation Committee and has been at all relevant times. Because of Bostock's position, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Yahoo! including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Bostock participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings. During the Relevant Period, Bostock sold 66,805 shares of Yahoo! stock for proceeds of $2,345,192.17 while in possession of material non-public information.

21.     Defendant Gary L. Wilson ("Wilson") is a Yahoo! director and member of the Audit Committee and has been at all relevant times. Because of Wilson's position, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Yahoo! including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and

-8-

SHAREHOLDER DERIVATIVE COMPLAINT

1    connections with other corporate officers and employees, attendance at Board

2    meetings and committees thereof, as well as reports and other information provided

3    to him in connection therewith. During the Relevant Period, Wilson participated in

4    the issuance of improper statements, including the preparation of the improper press

5    releases and SEC filings. During the Relevant Period, Wilson sold 23,600 shares of

6    Yahoo! stock for proceeds of $896,800 while in possession of material non-public

7    information.

8        22.    Defendant Ronald W. Burkle ("Burkle") is a Yahoo! director and

9    member of the Compensation Committee and has been at all relevant times.

10    Because of Burkle's position, he knew, consciously disregarded, was reckless and

11    grossly negligent in not knowing or should have known the adverse, non-public

12    information about the business of Yahoo! including its finances, markets and present

13    and future business prospects, via access to internal corporate documents,

14    conversations and connections with other corporate officers and employees,

15    attendance at Board meetings and committees thereof, as well as reports and other

16    information provided to him in connection therewith. During the Relevant Period,

17    Burkle participated in the issuance of improper statements, including the preparation

18    of the improper press releases and SEC filings.

19        23.    Defendant Vyomesh Joshi ("Joshi") is a Yahoo! director and member

20    of the Audit Committee and has been since July 2005. Because of Joshi's position,

21    he knew, consciously disregarded, was reckless and grossly negligent in not

22    knowing or should have known the adverse, non-public information about the

23    business of Yahoo! including its finances, markets and present and future business

24    prospects, via access to internal corporate documents, conversations and

25    connections with other corporate officers and employees, attendance at Board

26    meetings and committees thereof, as well as reports and other information provided

27    to him in connection therewith. During the Relevant Period, Joshi participated in

28

SHAREHOLDER DERIVATIVE COMPLAINT

1  | the issuance of improper statements, including the preparation of the improper press
2  | releases and SEC filings.

3  |     24.    The defendants identified in ¶¶13, 15-23 are referred to herein as the
4  | "Director Defendants." The defendants identified in ¶¶13-14 are referred to herein
5  | as the "Officer Defendants." The defendants identified in ¶¶13-21 are referred to
6  | herein as the "Insider Selling Defendants." Collectively, the Director Defendants,
7  | the Officer Defendants and Insider Selling Defendants are referred to herein as the
8  | "Individual Defendants."

9  | **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

10 |     25.    In committing the wrongful acts alleged herein, the Individual
11 | Defendants have pursued, or joined in the pursuit of, a common course of conduct,
12 | and have acted in concert with and conspired with one another in furtherance of
13 | their common plan or design. In addition to the wrongful conduct herein alleged as
14 | giving rise to primary liability, the Individual Defendants further aided and abetted
15 | and/or assisted each other in breaching their respective duties.

16 |     26.    During all times relevant hereto, the Individual Defendants collectively
17 | and individually initiated a course of conduct that was designed to and did:
18 | (i) conceal the fact that the Company was improperly portraying its business
19 | prospects, in order to allow defendants to artificially inflate the price of the
20 | Company's shares; (ii) maintain the Individual Defendants' executive and directorial
21 | positions at Yahoo! and the profits, power and prestige that the Individual
22 | Defendants enjoyed as a result of these positions; and (iii) deceive the investing
23 | public, including shareholders of Yahoo!, regarding the Individual Defendants'
24 | management of Yahoo!'s operations, the Company's financial health and stability,
25 | and future business prospects, specifically related to the Company's financials that
26 | had been misrepresented by defendants throughout the Relevant Period. In
27 | furtherance of this plan, conspiracy and course of conduct, the Individual
28 | Defendants collectively and individually took the actions set forth herein.

-10-

**SHAREHOLDER DERIVATIVE COMPLAINT**

27. The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least April 2004 and continuing thereafter. During this time, the Individual Defendants caused the Company to conceal the true fact that Yahoo! was misrepresenting its business prospects. In addition, defendants also made other specific, improper statements about Yahoo!'s financial performance and future business prospects, as alleged herein.

28. The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of Yahoo! common stock so they could: (i) dispose of over $728 million of their personally held stock; and (ii) protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

29. The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its business prospects and release improper statements. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

30. Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing,

-11-

SHAREHOLDER DERIVATIVE COMPLAINT

1 substantially assisted the accomplishment of that wrongdoing, and was aware of his
2 overall contribution to and furtherance of the wrongdoing.

### DUTIES OF THE INDIVIDUAL DEFENDANTS

4      31.    By reason of their positions as officers, directors and/or fiduciaries of
5 Yahoo! and because of their ability to control the business and corporate affairs of
6 Yahoo!, the Individual Defendants owed Yahoo! and its shareholders fiduciary
7 obligations of trust, loyalty, good faith and due care, and were and are required to
8 use their utmost ability to control and manage Yahoo! in a fair, just, honest and
9 equitable manner. The Individual Defendants were and are required to act in
10 furtherance of the best interests of Yahoo! and its shareholders so as to benefit all
11 shareholders equally and not in furtherance of their personal interest or benefit.

12      32.    Each director and officer of the Company owes to Yahoo! and its
13 shareholders the fiduciary duty to exercise good faith and diligence in the
14 administration of the affairs of the Company and in the use and preservation of its
15 property and assets, and the highest obligations of fair dealing. In addition, as
16 officers and/or directors of a publicly held company, the Individual Defendants had
17 a duty to promptly disseminate accurate and truthful information with regard to the
18 Company's revenue, margins, operations, performance, management, projections
19 and forecasts so that the market price of the Company's stock would be based on
20 truthful and accurate information.

21      33.    The Individual Defendants, because of their positions of control and
22 authority as directors and/or officers of Yahoo!, were able to and did, directly and/or
23 indirectly, exercise control over the wrongful acts complained of herein, as well as
24 the contents of the various public statements issued by the Company. Because of
25 their advisory, executive, managerial and directorial positions with Yahoo!, each of
26 the Individual Defendants had access to adverse non public information about the
27 financial condition, operations, and improper representations of Yahoo!.

28

SHAREHOLDER DERIVATIVE COMPLAINT

34.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Yahoo!, and was at all times acting within the course and scope of such agency.

35.    To discharge their duties, the officers and directors of Yahoo! were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Yahoo! were required to, among other things:

(a)    refrain from acting upon material inside corporate information to benefit themselves;

(b)    ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(c)    conduct the affairs of the Company in an efficient, business like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)    properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)    remain informed as to how Yahoo! conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

-13-

**SHAREHOLDER DERIVATIVE COMPLAINT**

1         (f)     ensure that the Company was operated in a diligent, honest and

2 prudent manner in compliance with all applicable federal, state and local laws, rules

3 and regulations.

4      36.     Each Individual Defendant, by virtue of his or her position as a director

5 and/or officer, owed to the Company and to its shareholders the fiduciary duties of

6 loyalty, good faith and the exercise of due care and diligence in the management and

7 administration of the affairs of the Company, as well as in the use and preservation

8 of its property and assets. The conduct of the Individual Defendants complained of

9 herein involves a knowing and culpable violation of their obligations as directors

10 and officers of Yahoo!, the absence of good faith on their part, and a reckless

11 disregard for their duties to the Company and its shareholders that the Individual

12 Defendants were aware or should have been aware posed a risk of serious injury to

13 the Company. The conduct of the Individual Defendants who were also officers

14 and/or directors of the Company during the Relevant Period have been ratified by

15 the remaining Individual Defendants who collectively comprised all of Yahoo!'s

16 Board during the Relevant Period.

17      37.     The Individual Defendants breached their duties of loyalty and good

18 faith by allowing defendants to cause, or by themselves causing, the Company to

19 misrepresent its financial results and prospects, as detailed herein *infra*, and by

20 failing to prevent the Individual Defendants from taking such illegal actions. In

21 addition, as a result of defendants' illegal actions and course of conduct during the

22 Relevant Period, the Company is now the subject of a class action lawsuit that

23 alleges violations of federal securities laws. As a result, Yahoo! has expended, and

24 will continue to expend, significant sums of money.

25      38.     Moreover, these actions have irreparably damaged Yahoo!'s corporate

26 image and goodwill. Yahoo!'s Board has misled the investing public, such that

27 Yahoo!'s ability to raise equity capital or debt on favorable terms in the future is

28 now impaired.

SHAREHOLDER DERIVATIVE COMPLAINT

## FALSE AND MISLEADING STATEMENTS

39. The Individual Defendants by their fiduciary duties of care, good faith and loyalty owed to Yahoo! a duty to insure that the Company's financial reporting fairly presented, in all material respects, the operations and financial condition of the Company. In order to adequately carry out these duties, it is necessary for the Individual Defendants to know and understand the material, non-public information to be either disclosed or omitted from the Company's public statements.

40. This material, non-public information principally included the fact that Yahoo! was improperly charging its advertising customers for services that the Company would not deliver. Furthermore, defendants Joshi, Kern, Kozel and Wilson, as members of the Audit Committee, had a special duty to know and understand this material information as set out in the Audit Committee's charter which provides that the committee is responsible for reviewing and discussing: (i) the Company's earnings press releases, as well as financial information and earnings guidance provided by the Company to analysts and rating agencies; and (ii) the Company's internal controls.

41. Defendants Semel and Decker as officers of Yahoo!, had ample opportunity to discuss this material information with their fellow officers at management meetings and via internal corporate documents and reports. Moreover, defendants Semel, Yang, Bostock, Burkle, Hippeau, Joshi, Kern, Kotick, Kozel and Wilson, as directors of Yahoo! had ample opportunity to discuss this material information with management and fellow directors at any of the Board meetings that occurred during the Relevant Period as well as at meetings of committees of the Board. Despite these duties, the Individual Defendants negligently, recklessly, and/or intentionally caused or allowed, by their actions or inactions, the following improper statements to be disseminated by Yahoo! to the investing public and the Company's shareholders during the Relevant Period.

SHAREHOLDER DERIVATIVE COMPLAINT

42. On April 7, 2004, the Individual Defendants caused or allowed the Company to issue a press release entitled "Yahoo! Reports First Quarter 2004 Financial Results; Company Posts Revenues of $758 Million, Operating Income of $132 Million, Operating Income Before Depreciation and Amortization of $211 Million." The press release stated in relevant part:

> *"Yahoo!'s performance surpassed even our high expectations, delivering the most successful quarter in the Company's history," said Terry Semel, chairman and chief executive officer, Yahoo!" With our products more popular than ever before, we have experienced success across our entire business including strong growth in our fee-based and marketing services."*
>
> - Revenues were $758 million in the first quarter of 2004, compared to $283 million in the same period of 2003.
> - Revenues excluding traffic acquisition costs ("TAC") were $550 million in the first quarter of 2004, compared to $283 million for the same period of 2003.
> - Gross profit for the first quarter of 2004 was $476 million, compared to $240 million for the same period of 2003.
> - Operating income for the first quarter of 2004 was $132 million, compared to $55 million for the same period of 2003.
> - Operating income before depreciation and amortization for the first quarter of 2004 was $211 million, compared to $85 million for the same period of 2003.
> - Cash flow from operating activities for the first quarter of 2004 was $236 million, compared to $99 million for the same period of 2003.
> - Free cash flow for the first quarter of 2004 was $197 million, compared to $78 million for the same period of 2003.
>
> *"Yahoo! is off to a great start in 2004. Our growth is a result of very impressive performance from our ongoing operations, leveraged further by recent acquisitions" said Susan Decker, chief financial officer, Yahoo!. "Looking forward, we are focused on making the appropriate investments and capital allocation decisions to help ensure sustainable, long-term growth. Due to our increased optimism about our business, we have raised our financial outlook for the full year 2004."*

43. On June 28, 2004, the Individual Defendants caused or allowed the Company to issue a press release entitled "Overture Launches Local Sponsored Search Listings to Leading Web Sites." The press release stated in relevant part:

> Overture Services, Inc., a wholly-owned subsidiary of Yahoo Inc. and provider of essential online marketing services, today announced the launch of Local Match?, its new sponsored search product which delivers local search listings to consumers searching online for local products and services. Through Local Match, advertisers can precisely

-16-

target customers interested in a specific neighborhood and present customized offers and business details to them.

Overture's Local Match listings appear today in the U.S. on Yahoo! and MyCity.com and will be displayed on other popular sites including MSN, ESPN.com and certain sites within the InfoSpace network, including online directory sites Switchboard.com and InfoSpace.com and search sites Dogpile.com, WebCrawler.com, MetaCrawler.com and Excite.com. Through its strong network of distribution sites, Local Match offers advertisers of all sizes – including businesses that do not have a Web site – the opportunity to reach consumers searching online for products and services in the advertiser's local area.

*"Overture has built upon its core sponsored search product to deliver a highly relevant and precise local offering to businesses of all sizes, whether they have a Web site or not," said Geoff Stevens, General Manager, Local for Overture. "The launch of Local Match marks yet another addition to our growing suite of integrated sponsored search offerings. As the product evolves, we are confident that both advertisers and consumers will realize the significant value of the highly targeted marketing and incredibly relevant search experience enabled by Local Match."*

"Local search represents a very significant opportunity for both small and large advertisers, as consumers go online to find local business information," said Greg Sterling, program director for The Kelsey Group. "Our research shows that slightly more than 25% of commercial searches performed by online buyers today are local, and we expect that figure to grow over time as local search capabilities continue to improve."

Local Match enables advertisers of all sizes to precisely target customers who are searching the Web to find products and services from a local provider. Specifically, advertisers have the ability to pinpoint a geographic area surrounding their business (between 0.5 to 100 miles) in which they would like their search listing to be shown. For example, an electronics store in Austin, TX could choose to have its listings displayed only to users searching for "DVD player" within a five-mile radius of its location. Similarly, a large national consumer electronics retailer could use Local Match to tailor its listings and discounts to customers who are looking to purchase items at specific local stores.

In addition, for businesses that do not have a Web site, Local Match provides a customizable business information page that offers key details about their business such as a street address, phone number, payment options, hours of operation and a dynamic map.

44.     On July 7, 2004, the Individual Defendants caused or allowed the Company to issue a press release entitled "Yahoo! Reports Second Quarter 2004 Financial Results; Company Posts Revenues of $832 Million, Operating Income of

-17-

$149 Million, Operating Income Before Depreciation and Amortization of $234 Million." The press release stated in relevant part:

> *"Yahoo!'s second quarter results represent another record quarter for the Company and demonstrate continued execution of our core priorities," said Terry Semel, chairman and chief executive officer, Yahoo!. "Yahoo! is in the midst of a product renaissance, as we have been busier than ever rolling out new products and services we believe will be essential to our users."*

- Revenues were $832 million for the second quarter of 2004, compared to $321 million for the same period of 2003.
- Revenues excluding traffic acquisition costs ("TAC") were $609 million for the second quarter of 2004, compared to $321 million for the same period of 2003.
- Gross profit for the second quarter of 2004 was $535 million, compared to $275 million for the same period of 2003.
- Operating income for the second quarter of 2004 was $149 million, compared to $63 million for the same period of 2003.
- Operating income before depreciation and amortization for the second quarter of 2004 was $234 million, compared to $98 million for the same period of 2003.
- Cash flow from operating activities for the second quarter of 2004 was $250 million, compared to $92 million for the same period of 2003.
- Free cash flow for the second quarter of 2004 was $194 million, compared to $71 million for the same period of 2003.

> *"Yahoo! is benefiting from its diverse and balanced sources of revenue, which have well positioned the Company to deliver strong, consistent, and profitable growth," said Susan Decker, chief financial officer, Yahoo!. "Yahoo! remains committed to making the appropriate investments in our products and services in order to ensure that they remain among the most popular on the Internet, and continue to contribute to the creation of long-term shareholder value."*

45. On October 12, 2004, the Individual Defendants caused or allowed the Company to issue a press release entitled "Yahoo! Reports Third Quarter 2004 Financial Results; Company Posts Revenues of $907 Million, Operating Income of $172 Million, Operating Income Before Depreciation and Amortization of $260 Million." The press release stated in relevant part:

> *"Yahoo! began to demonstrate the next stage in the Company's evolution in the third quarter, and in doing so recorded its sixth consecutive quarter of record revenue," said Terry Semel, chairman and chief executive officer, Yahoo!. "We accelerated the pace at which new products and services were developed, which in-turn helped increase the level of user engagement across the Yahoo! network. Our engaged audience enables us to deliver an unmatched*

-18-

SHAREHOLDER DERIVATIVE COMPLAINT

*set of advertising opportunities, providing deeper value to our marketers, and supporting the mantra that great products are the key to a great business."*

- Revenues were $907 million for the third quarter of 2004, a 154 percent increase compared to $357 million for the same period of 2003.
- Revenues excluding traffic acquisition costs ("TAC") were $655 million for the third quarter of 2004, an 84 percent increase compared to the $357 million for the same period of 2003.
- Gross profit for the third quarter of 2004 was $574 million, an 86 percent increase compared to $310 million for the same period of 2003.
- Operating income for the third quarter of 2004 was $172 million, an increase of 106 percent compared to $83 million for the same period of 2003.
- Operating income before depreciation and amortization for the third quarter of 2004 was $260 million, a 122 percent increase compared to $117 million for the same period of 2003.
- Cash flow from operating activities for the third quarter of 2004 was $267 million, an increase of 97 percent compared to $136 million for the same period of 2003.
- Free cash flow for the third quarter of 2004 was $202 million, a 108 percent increase over the $97 million reported for the same period of 2003.
- Net income for the third quarter of 2004 was $253 million or $0.17 per diluted share (including a net impact of $129 million, or $0.09 per share, related to the sale of an investment and the associated tax benefit resulting from fully reserved capital losses becoming realizable). Excluding this gain, net income for the third quarter was $124 million, or $0.09 per diluted share. This compares with net income of $65 million or $0.05 per diluted share for the same period of 2003.
- The provision for income taxes of $67 million yielded an effective tax rate of 21% for the third quarter of 2004 as a result of the previously described tax benefit associated with the capital loss carryforwards. The provision for income taxes in the same period of 2003 was $40 million, and yielded an effective tax rate of 38%.

*"Yahoo! generated its highest-ever level of free cash flow in the third quarter, more than doubling the amount generated one year ago," said Susan Decker, chief financial officer, Yahoo!. "We believe that long-term free cash flow generation is the most important factor driving shareholder value and we are very pleased with both its magnitude in this quarter and the strong foundation on which it is based, positioning us well for sustained growth."*

46. On November 17, 2004, the Individual Defendants caused or allowed the Company to issue a press release entitled "Yahoo's Overture Extends Sponsored Search Relationship with MSN Through June 2006." The press release stated in relevant part:

-19-

1   Overture Services, Inc., a wholly-owned subsidiary of Yahoo Inc. and
    provider of essential online marketing services, today announced the
2   extension of its sponsored search distribution relationship with
    Microsoft Corp. in the United States and internationally through June
3   2006.

4          Under the terms of the extension, Overture will continue to
    provide its sponsored search results to MSN sites in the U.S. and
5   Canada, Europe and Asia. The previous agreement ran through June
    2005.
6
           "Overture has been a strategic partner of MSN since 2001, and
7   we look forward to continuing our productive relationship," said Yusuf
    Mehdi, corporate vice president for the MSN Information Services &
8   Merchant Platform division at Microsoft. "We are pleased that our
    collaboration has helped grow the online ad industry and benefited
9   consumers and advertisers in the process."

10         Overture's industry-leading global distribution network includes
    major Web portals, ISPs and other heavily trafficked destination sites.
11  Overture's search listings are generated by the company's advertisers
    who bid for placement on keywords relevant to their business. "MSN is
12  a valued industry partner and we are pleased to extend our successful
    relationship in the U.S. and around the world," said Ted Meisel,
13  president of Overture. "We appreciate the vote of confidence from
    MSN and we look forward to working with them on innovative
14  sponsored search solutions."

15      47.    On January 18, 2005, the Individual Defendants caused or allowed the

16  Company to issue a press release entitled "Yahoo! Reports Fourth Quarter and Full

17  Year 2004 Financial Results; Company Posts Full Year Revenues of $3,575 Million,

18  Operating Income of $689 Million, Operating Income Before Depreciation and

19  Amortization of $1,032 Million." The press release stated in relevant part:

20          *"Yahoo! moved at an impressive pace in the fourth quarter,
    capping another record year for the Company. Our users were more
21  engaged in 2004 than ever before because of Yahoo!'s relentless
    focus on delivering the most innovative products and services on the
22  Internet," said Terry Semel, chairman and chief executive officer,
    Yahoo!. "Yahoo! also benefited from the growing acceptance of
23  online advertising with marketers who recognize its effectiveness and
    are therefore increasingly using this platform to reach their
24  consumers."*

25      ▪    Revenues were $1,078 million for the fourth quarter of 2004, a
             62 percent increase compared to $664 million for the same
26           period of 2003.
        ▪    Revenues excluding traffic acquisition costs ("TAC") were $785
27           million for the fourth quarter of 2004, a 54 percent increase
             compared to $511 million for the same period of 2003.
28

-20-

1  ■  Gross profit for the fourth quarter of 2004 was $691 million, a 56 percent increase compared to $443 million for the same period of 2003.
2
3  ■  Operating income for the fourth quarter of 2004 was $235 million, a 149 percent increase compared to $94 million for the same period of 2003.
4  ■  Operating income before depreciation and amortization for the fourth quarter of 2004 was $327 million, an 84 percent increase compared to $178 million for the same period of 2003.
5
6  ■  Cash flow from operating activities for the fourth quarter of 2004 was $337 million, a 231 percent increase compared to $102 million for the same period of 2003.
7  ■  Free cash flow for the fourth quarter of 2004 was $251 million, a 172 percent increase compared to $92 million for the same period of 2003.
8
9  ■  Net income for the fourth quarter of 2004 was $373 million or $0.25 per diluted share (including a net impact of $185 million, or $0.13 per diluted share, related to the sale of an investment). Excluding this gain, net income for the fourth quarter was $187 million, or $0.13 per diluted share. This compares with net income of $75 million or $0.05 per diluted share for the same period of 2003.
10
11
12
13  *"Yahoo!'s strong fourth quarter performance completes our third consecutive year of delivering strong organic revenue growth, expanding operating margins, and generating substantial free cash flow" said Susan Decker, chief financial officer, Yahoo!. "We are attracting more and more users to Yahoo!'s network of services and driving their usage deeper with more relevant products and services. This deeper usage is the real magic behind the surpassing of our financial objectives."*
14
15
16
17  ■  Revenues for the year ended December 31, 2004 were $3,575 million, a 120 percent increase compared to $1,625 million for 2003.
18
19  ■  Revenues excluding TAC for 2004 were $2,600 million, a 77 percent increase compared to $1,473 million for 2003.
20  ■  Gross profit for 2004 was $2,276 million, an 80 percent increase compared to $1,267 million for 2003.
21  ■  Operating income for 2004 was $689 million, a 133 percent increase compared to $296 million for 2003.
22  ■  Operating income before depreciation and amortization for 2004 was $1,032 million, a 116 percent increase compared to $477 million for 2003.
23  ■  Cash flow from operating activities for 2004 was $1,090 million, a 155 percent increase compared to $428 million for 2003.
24  ■  Free cash flow for 2004 was $844 million, a 149 percent increase compared to $339 million for 2003.
25  ■  Net income for 2004 was $840 million or $0.58 per diluted share (including a net impact of $314 million, or $0.22 per diluted share, related to the sale of an investment and the associated tax benefit resulting from fully reserved capital losses becoming realizable). Excluding this gain, net income for 2004 was $526 million, or $0.36 per diluted share. This compares with net income of $238 million or $0.18 per diluted share for 2003.
26
27
28

-21-

**SHAREHOLDER DERIVATIVE COMPLAINT**

■ The provision for income taxes of $438 million yielded an effective tax rate of 37% for 2004 as a result of the previously described tax benefit associated with the capital loss carryforwards. The provision for income taxes for 2003 was $147 million, and yielded an effective tax rate of 43%.

48. On March 1, 2005, the Individual Defendants caused or allowed the Company to issue a press release entitled "Overture Services to Become Yahoo! Search Marketing Solutions; Will Offer Sponsored Search and Submit Products, Providing One-Stop Search Marketing Resource for Businesses Worldwide." The press release stated in relevant part:

Overture Services, Inc., a wholly-owned subsidiary of Yahoo Inc. today announced that it will be re-branded Yahoo! Search Marketing Solutions and will bring together its sponsored search offerings and Yahoo!'s listings submit products under the new banner. Through Yahoo! Search Marketing Solutions, advertisers of all sizes will enjoy convenient access to the industry's most comprehensive suite of search marketing and related products and services.

Yahoo! Search Marketing Solutions' suite of offerings will include the following products:

■ Sponsored Search Listings, the flagship search advertising product.
■ Content Match™, Yahoo!'s contextual advertising listings.
■ Local Match™, Yahoo!'s local sponsored search offering.
■ Site Match™ Self Serve and Site Match Xchange™, Yahoo!'s search URL submission products.
■ Yahoo! Product Submit™, the Yahoo! Shopping URL submission program.
■ Yahoo! Express™, the Yahoo! Directory URL submission program.
■ Marketing Console™, which enables advertisers to track campaign performance across multiple online channels.
■ Search Optimizer™, which allows advertisers to improve their campaign performance and reduce the amount of time spent managing their listings.

The group will also continue to enhance and expand Yahoo's network of sponsored search distribution sites.

In conjunction with Overture's re-branding, Yahoo! will launch a new Advertising Solutions Center in the U.S., through which businesses can plan and buy Yahoo! Search Marketing Solutions products. In addition, the new center will offer marketers information about Yahoo!'s customized, creative media solutions, providing them access to the largest set of search marketing and brand advertising solutions on the web.

-22-

SHAREHOLDER DERIVATIVE COMPLAINT

*"Our mission is to be essential to marketers of all types around the world," said Ted Meisel, Senior Vice President, Yahoo! Inc. "Unifying all of our search marketing and related products under one banner and one common approach reflects our commitment to integrate and simplify online advertising, allowing businesses of all sizes to take advantage of the Yahoo! search marketing solutions that best fit their marketing goals."*

Overture will formally change its brand in the U.S. early next quarter. After the U.S. re-branding is complete, Overture's international markets will be re-branded at a later date – except for Japan and Korea, where the Overture brand will be maintained. Several products within the suite will be re-named once Overture assumes the Yahoo! brand in the U.S.

49.     On April 19, 2005, the Individual Defendants caused or allowed the Company to issue a press release entitled "Yahoo! Reports First Quarter 2005 Financial Results; Revenues – $1,174 Million, Operating Income – $247 Million, Operating Income Before Depreciation and Amortization – $345 Million." The press release stated in relevant part:

Yahoo! Inc. today reported results  for the first quarter ended March 31, 2005.

*"Yahoo! entered 2005 on a high note, delivering strong growth and record revenue for the eighth consecutive quarter, further validating the strength of Yahoo!'s business model," said Terry Semel, chairman and chief executive officer, Yahoo!. "We are on the cusp of witnessing a significant increase in engagement of consumers on the Internet and believe we are best positioned to capitalize on the many opportunities to which we are exposed."*

**Consolidated Financial Results**

- Revenues were $1,174 million for the first quarter of 2005, a 55 percent increase compared to $758 million for the same period of 2004.
    - Marketing services revenue was $1,025 million for the first quarter of 2005, a 54 percent increase compared to $665 million for the same period of 2004.
    - Fees revenue was $149 million for the first quarter of 2005, a 61 percent increase compared to $93 million for the same period of 2004.
- Revenues excluding traffic acquisition costs ("TAC") were $821 million for the first quarter of 2005, a 49 percent increase compared to $550 million for the same period of 2004.
- Gross profit for the first quarter of 2005 was $720 million, a 51 percent increase compared to $476 million for the same period of 2004.

-23-

- Operating income for the first quarter of 2005 was $247 million, an 87 percent increase compared to $132 million for the same period of 2004.
- Operating income before depreciation and amortization for the first quarter of 2005 was $345 million, a 64 percent increase compared to $211 million for the same period of 2004.
- Cash flow from operating activities for the first quarter of 2005 was $386 million, a 63 percent increase compared to $236 million for the same period of 2004.
- Free cash flow for the first quarter of 2005 was $318 million, a 61 percent increase compared to $197 million for the same period of 2004.
- Net income for the first quarter of 2005 was $205 million or $0.14 per diluted share (including net income of $15 million, or $0.01 per diluted share, related to the sale of certain investments and settlements). This compares with net income of $101 million or $0.07 per diluted share for the same period of 2004.

*"In the first quarter, Yahoo! continued to grow its user base and drive deeper engagement, the core user fundamentals that lead to favorable financial returns," said Susan Decker, chief financial officer, Yahoo!. "We continued to increase levels of free cash flow while investing in the business, demonstrating the leverage in our operating model, and driving long-term shareholder value."*

50. On July 19, 2005, the Individual Defendants caused or allowed the Company to issue a press release entitled "Yahoo! Reports Second Quarter 2005 Financial Results; Revenues – $1,253 Million, Operating Income – $261 Million, Operating Income Before Depreciation and Amortization – $368 Million." The press release stated in relevant part:

Yahoo! Inc. today reported results for the second quarter ended June 30, 2005.

*"Yahoo! continued to see solid growth in the second quarter as a result of our strength in both search marketing and brand advertising, increased engagement from our large, global audience, and our ability to execute and perform according to plan," said Terry Semel, chairman and chief executive officer, Yahoo!. "We have a healthy business model that we believe will enable us to take advantage of future growth opportunities and we remain dedicated to providing our users with the very best services on the Internet."*

**Consolidated Financial Results**

- Revenues were $1,253 million for the second quarter of 2005, a 51 percent increase compared to $832 million for the same period of 2004.

-24-

- Marketing services revenue was $1,094 million for the second quarter of 2005, a 51 percent increase compared to $723 million for the same period of 2004.
- Fees revenue was $159 million for the second quarter of 2005, a 45 percent increase compared to $109 million for the same period of 2004.

• Revenues excluding traffic acquisition costs ("TAC") were $875 million for the second quarter of 2005, a 44 percent increase compared to $609 million for the same period of 2004.

• Gross profit for the second quarter of 2005 was $767 million, a 43 percent increase compared to $535 million for the same period of 2004.

• Operating income for the second quarter of 2005 was $261 million, a 75 percent increase compared to $149 million for the same period of 2004.

• Operating income before depreciation and amortization for the second quarter of 2005 was $368 million, a 57 percent increase compared to $234 million for the same period of 2004.

• Cash flow from operating activities for the second quarter of 2005 was $404 million, a 62 percent increase compared to $250 million for the same period of 2004.

• Free cash flow for the second quarter of 2005 was $300 million, a 55 percent increase compared to $194 million for the same period of 2004.

• Net income for the second quarter of 2005 was $755 million or $0.51 per diluted share (including net income of $563 million, or $0.38 per diluted share, related to the sale of an investment). This compares with net income of $113 million or $0.08 per diluted share for the same period of 2004.

*"We are very pleased with our second quarter results as they clearly underscore two fundamental business model strengths: excellent growth and great balance," said Susan Decker, chief financial officer, Yahoo!. "We see this as a terrific combination, leading to the quarter's strong organic revenue growth, robust profitability, and substantial free cash flow."*

51.     On October 18, 2005, the Individual Defendants caused or allowed the Company to issue a press release entitled "Yahoo! Reports Third Quarter 2005 Financial Results; Revenues – $1,330 Million, Operating Income – $270 Million, Operating Income Before Depreciation and Amortization – $385 Million." The press release stated in relevant part:

Yahoo! Inc. today reported results for the third quarter ended September 30, 2005.

*"Yahoo! had another record quarter and continued to see solid growth across our business. We introduced a number of new and innovative products and services and continued to provide more effective means for advertisers to engage with consumers," said Terry*

-25-

*Semel, chairman and chief executive officer, Yahoo! "Our ongoing ability to execute against plan and utilize our industry leading technology continues to position us for long-term growth and enables us to provide our users with the best content and most relevant online experience."*

**Consolidated Financial Results**

- Revenues were $1,330 million for the third quarter of 2005, a 47 percent increase compared to $907 million for the same period of 2004.
    - Marketing services revenue was $1,160 million for the third quarter of 2005, a 46 percent increase compared to $797 million for the same period of 2004.
    - Fees revenue was $170 million for the third quarter of 2005, a 55 percent increase compared to $110 million for the same period of 2004.
- Revenues excluding traffic acquisition costs ("TAC") were $932 million for the third quarter of 2005, a 42 percent increase compared to $655 million for the same period of 2004.
- Gross profit for the third quarter of 2005 was $810 million, a 41 percent increase compared to $574 million for the same period of 2004.
- Operating income for the third quarter of 2005 was $270 million, a 57 percent increase compared to $172 million for the same period of 2004.
- Operating income before depreciation and amortization for the third quarter of 2005 was $385 million, a 48 percent increase compared to $260 million for the same period of 2004.
- Cash flow from operating activities for the third quarter of 2005 was $440 million, a 65 percent increase compared to $267 million for the same period of 2004.
- Free cash flow for the third quarter of 2005 was $345 million, a 71 percent increase compared to $202 million for the same period of 2004.
- Net income for the third quarter of 2005 was $254 million or $0.17 per diluted share (including a net impact of $16 million, or $0.01 per diluted share, related to the sales of investments). For the same period of 2004, net income was $253 million or $0.17 per diluted share (including a net impact of $129 million, or $0.09 per share, related to the sale of an investment and an associated tax benefit).

*"We are extremely pleased with our third quarter results, which exceeded expectations, showing strong revenue growth, continued profitability, and significant free cash flow," said Susan Decker, chief financial officer, Yahoo! "Our ability to deliver another quarter of record results, while also investing in internal operations and external acquisitions, continues to reinforce the power of our business model."*

52.    On January 17, 2006, the Individual Defendants caused or allowed the

Company to issue a press release entitled "Yahoo! Reports Fourth Quarter and Full

Year 2005 Financial Results; Full Year Revenues – $5,258 Million, Operating

Income – $1,108 Million, Operating Income Before Depreciation and Amortization – $1,557 Million." The press release stated in relevant part:

> Yahoo! Inc. today reported results for the fourth quarter and full year ended December 31, 2005.
>
> *"Yahoo! has a strong track record of focusing and delivering on some of the biggest opportunities on the Internet," said Terry Semel, chairman and chief executive officer, Yahoo!. "In 2005, Yahoo! continued to achieve significant results by providing some of the most innovative services to our hundreds of millions of consumers and deepening both our global reach and user engagement. As we look ahead, we will continue to focus on creating the best consumer experience, finding new ways to engage our audience and delivering the best value for our advertisers."*
>
> **Fourth Quarter 2005 Financial Results**
>
> - Revenues were $1,501 million for the fourth quarter of 2005, a 39 percent increase compared to $1,078 million for the same period of 2004.
>   - Marketing services revenue was $1,315 million for the fourth quarter of 2005, a 39 percent increase compared to $943 million for the same period of 2004.
>   - Fees revenue was $186 million for the fourth quarter of 2005, a 38 percent increase compared to $135 million for the same period of 2004.
> - Revenues excluding traffic acquisition costs ("TAC") were $1,068 million for the fourth quarter of 2005, a 36 percent increase compared to $785 million for the same period of 2004.
> - Gross profit for the fourth quarter of 2005 was $928 million, a 34 percent increase compared to $691 million for the same period of 2004.
> - Operating income for the fourth quarter of 2005 was $329 million, a 40 percent increase compared to $235 million for the same period of 2004.
> - Operating income before depreciation and amortization for the fourth quarter of 2005 was $459 million, a 40 percent increase compared to $327 million for the same period of 2004.
> - Cash flow from operating activities for the fourth quarter of 2005 was $481 million, a 43 percent increase compared to $337 million for the same period of 2004.
> - Free cash flow for the fourth quarter of 2005 was $330 million, a 31 percent increase compared to $251 million for the same period of 2004.
> - Net income for the fourth quarter of 2005 was $683 million or $0.46 per diluted share compared to $373 million or $0.25 per diluted share for the same period of 2004.
> - Adjusted net income for the fourth quarter of 2005 was $247 million or $0.16 per diluted share compared to $187 million or $0.13 per diluted share for the same period of 2004.
> - The provision for income taxes for the fourth quarter of 2005 was $18 million and yielded an effective tax rate of 3 percent as a result of a tax benefit related to a subsidiary restructuring

-27-

transaction completed in the quarter. The provision for income taxes for the fourth quarter of 2004 was $234 million, and yielded an effective tax rate of 40 percent.

- Explanations of the Company's non-GAAP financial measures and the related reconciliations to the GAAP financial measures the Company considers most comparable are included in the accompanying "Note to Unaudited Condensed Consolidated Statements of Operations" and the "Reconciliations to Unaudited Condensed Consolidated Statements of Operations".

*"We continued to execute on our plan during both the fourth quarter and the full year 2005 – delivering very strong revenue growth, profitability and returns on our significant free cash flow – while also investing in our business to position the company for future growth," said Susan Decker, chief financial officer, Yahoo!. "In 2006, we will focus on continuing to enhance our advertising products, offering the most effective solutions to our advertisers and publishers, while also seeking to generate maximum value for our network."*

53. On April 18, 2006, the Individual Defendants caused or allowed the Company to issue a press release entitled "Yahoo! Reports First Quarter 2006 Financial Results; Revenues – $1,567 Million, Operating Income – $201 Million, Operating Income Before Depreciation and Amortization – $435 Million." The press release stated in relevant part:

Yahoo! Inc. today reported results for the first quarter ended March 31, 2006.

*"Yahoo! had another strong performance this quarter. Our overall advertising business saw solid growth and our user numbers continued to climb," said Terry Semel, chairman and chief executive officer, Yahoo! "We believe that our business model and our focus on exploring new opportunities in emerging areas has set us apart from the competition and has enabled us to offer our users the best online experience and our advertisers the most value online."*

**First Quarter 2006 Financial Results**

- Revenues were $1,567 million for the first quarter of 2006, a 34 percent increase compared to $1,174 million for the same period of 2005.
  - Marketing services revenue was $1,381 million for the first quarter of 2006, a 35 percent increase compared to $1,025 million for the same period of 2005.
  - Fees revenue was $186 million for the first quarter of 2006, a 25 percent increase compared to $149 million for the same period of 2005.

-28-

- Revenues excluding traffic acquisition costs ("TAC") were $1,088 million for the first quarter of 2006, a 33 percent increase compared to $821 million for the same period of 2005.
- Gross profit for the first quarter of 2006 was $909 million, a 29 percent increase compared to $707 million for the same period of 2005.
- Operating income for the first quarter of 2006 was $201 million (including $109 million for stock compensation expense recorded under the fair value method), a 19 percent decrease compared to $247 million (including $9 million for stock compensation expense recorded under the intrinsic value method) for the same period of 2005.
- Operating income before depreciation and amortization for the first quarter of 2006 was $435 million, a 26 percent increase compared to $345 million for the same period of 2005.
- Cash flow from operating activities for the first quarter of 2006 was $445 million, a 15 percent increase compared to $386 million for the same period of 2005.
- Free cash flow for the first quarter of 2006 was $343 million, an 8 percent increase compared to $318 million for the same period of 2005.
- Net income for the first quarter of 2006 was $160 million or $0.11 per diluted share (including $71 million of stock compensation expense, net of tax, recorded under the fair value method), compared to $205 million or $0.14 per diluted share for the same period of 2005 (including $6 million of stock compensation expense, net of tax, recorded under the intrinsic value method) or compared to adjusted net income of $138 million or $0.09 per diluted share (including $57 million of stock compensation, net of tax, calculated under the fair value method and excluding gains of $15 million, net of tax, on the sale of certain investments and settlements) for the first quarter of 2005.
- Adjusted net income excluding stock compensation expense, net of tax, recorded under the fair value method for the first quarter of 2006 was $231 million or $0.15 per diluted share. This compares to adjusted net income of $195 million or $0.13 per diluted share, excluding stock compensation expense, net of tax, recorded under the intrinsic value method and gains on the sale of certain investments and settlements, net of tax, for the same period of 2005.
- Explanations of the Company's non-GAAP financial measures and the related reconciliations to the GAAP financial measures the Company considers most comparable are included in the accompanying "Note to Unaudited Condensed Consolidated Statements of Operations" and the "Reconciliations to Unaudited Condensed Consolidated Statements of Operations"

*We are off to a terrific start to the year, demonstrated by strong revenue and profitability growth, along with significant free cash generation," said Susan Decker, chief financial officer, Yahoo! "Our business strength allowed us to both invest close to $750 million in buying back stock this quarter while also investing in key operating initiatives that will enhance our solutions for our advertisers and our offerings for our user community."*

-29-

**SHAREHOLDER DERIVATIVE COMPLAINT**

# THE TRUTH IS REVEALED

54. On July 18, 2006, the Individual Defendants caused or allowed the Company to issue a press release entitled "Yahoo! Reports Second Quarter 2006 Financial Results; Revenues – $1,576 Million, Operating Income – $230 Million, Operating Income Before Depreciation, Amortization and Stock-Based Compensation Expense – $457 Million." The press release stated in relevant part:

Yahoo! Inc. today reported results for the second quarter ended June 30, 2006.

"Yahoo! continued to make major strides this quarter against some of our most valuable business initiatives, further strengthening our foundation for ongoing growth," said Terry Semel, chairman and chief executive officer, Yahoo!. "Our ability to remain focused on our advertiser and consumer communities, while also continuing to innovate and take advantage of new opportunities in the marketplace, has put us in a great position."

**Second Quarter 2006 Financial Results**

- Revenues were $1,576 million for the second quarter of 2006, a 26 percent increase compared to $1,253 million for the same period of 2005.
    - Marketing services revenue was $1,386 million for the second quarter of 2006, a 27 percent increase compared to $1,094 million for the same period of 2005.
    - Fees revenue was $190 million for the second quarter of 2006, a 19 percent increase compared to $159 million for the same period of 2005.
- Revenues excluding traffic acquisition costs ("TAC") were $1,123 million for the second quarter of 2006, a 28 percent increase compared to $875 million for the same period of 2005.
- Gross profit for the second quarter of 2006 was $930 million, a 24 percent increase compared to $753 million for the same period of 2005.
- Operating income for the second quarter of 2006 was $230 million (including $100 million for stock-based compensation expense recorded under the fair value method), a 12 percent decrease compared to $261 million (including $11 million for stock-based compensation expense recorded under the intrinsic value method) for the same period of 2005.
- Operating income before depreciation, amortization and stock-based compensation expense for the second quarter of 2006 was $457 million, a 24 percent increase compared to $368 million for the same period of 2005.
- Cash flow from operating activities for the second quarter of 2006 was $430 million, a 6 percent increase compared to $404 million for the same period of 2005.

-30-

- Free cash flow for the second quarter of 2006 was $358 million, a 19 percent increase compared to $300 million for the same period of 2005.
- Net income for the second quarter of 2006 was $164 million or $0.11 per diluted share (including $73 million of stock-based compensation expense, net of tax, recorded under the fair value method), compared to $755 million or $0.51 per diluted share for the same period of 2005 (including $7 million of stock-based compensation expense, net of tax, recorded under the intrinsic value method) or compared to adjusted net income of $152 million or $0.10 per diluted share (including $57 million of stock-based compensation, net of tax, calculated under the fair value method and excluding gains of $552 million, net of tax, on the sale of certain investments and settlements) for the second quarter of 2005.
- Adjusted net income excluding stock-based compensation expense, net of tax, recorded under the fair value method for the second quarter of 2006 was $237 million or $0.16 per diluted share. This compares to adjusted net income of $209 million or $0.14 per diluted share, excluding stock-based compensation expense, net of tax, recorded under the intrinsic value method and gains on the sale of certain investments and settlements, net of tax, for the same period of 2005.
- Explanations of the Company's non-GAAP financial measures and the related reconciliations of the GAAP financial measures the Company considers most comparable are included in the accompanying "Note to Unaudited Condensed Consolidated Statements of Operations" and the "Reconciliations to Unaudited Condensed Consolidated Statements of Operations."

"We continued to execute on our plan in the second quarter – delivering strong revenue growth, profitability, and returns on our significant free cash flow – while also investing in our business to position the company for future growth," said Susan Decker, chief financial officer, Yahoo! "We believe these investments will expand our unique collection of online services to best meet the objectives of our customers and users, generating maximum value for our network."

55.    Yahoo! announced sales in the July 18, 2006 press release were significantly lower than expected. These reduced sales coincided with Yahoo!'s declining Web search market share, which declined while Google's market share increased from 37% to 45%. Yahoo!'s value, which had been driven up by the improper statements, declined 22% to $25.20 per share on news of the Company's dismal second quarter 2006 performance and analyst downgrades, thus billions of dollars in market capitalization dissipated overnight.

SHAREHOLDER DERIVATIVE COMPLAINT

## REASONS THE STATEMENTS WERE IMPROPER

56.     Yahoo!'s Relevant Period statements failed to disclose and misrepresented the following material adverse facts, which the Individual Defendants knew, consciously disregarded, were reckless and grossly negligent in not knowing or should have known:

(a)     Yahoo! generated revenue by improperly misleading Internet advertising business customers to induce these customers to buy Yahoo! advertising products;

(b)     Yahoo! employees made improper representations regarding the Company's advertising technology and products to its customers;

(c)     Yahoo! improperly represented the essential characteristics, quality, and/or nature of competing products and commercial activities, including relevance, potential click-throughs and quality;

(d)     Yahoo!'s advertising technology was operationally defective, causing its own advertising offerings to substantially under-perform those of its rivals;

(e)     Whereas Yahoo!'s rivals were paying high-traffic vendors to route traffic through their Web sites, Yahoo! was charging large vendors for access and was dependent on that revenue to make its revenue targets, making Yahoo!'s Web site a less desirable location for vendors to drive traffic to; and

(f)     Yahoo! was losing market share to Google and other Internet search providers.

## DAMAGES TO THE COMPANY

57.     As a result of the Individual Defendants' improprieties, Yahoo! disseminated improper statements concerning its business prospects as alleged above. In addition, as a result of defendants' Relevant Period improprieties, the Company is now the subject of a class action lawsuit that alleges violations of the federal securities laws.

58.     As a direct and proximate result of the Individual Defendants' actions as alleged above, Yahoo!'s market capitalization has been damaged by over $6.5 billion.  At the same time that the Individual Defendants were causing Yahoo! to suffer such devastation of its market capitalization, the Insider Selling Defendants were profiting by selling over $728 million of their personally held stock.

59.     Further, as a direct and proximate result of Individual Defendants' actions, Yahoo! has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

        (a)     Costs incurred to carry out internal investigations, including legal fees paid to outside counsel;

        (b)     Costs incurred in investigating and defending Yahoo! and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment;

        (c)     Costs incurred from compensation and benefits paid to the defendants who have breached their fiduciary duties to Yahoo!; and

        (d)     Costs incurred from the loss of the Company's advertising customers' confidence in Yahoo!'s services.

60.     Moreover, these actions have irreparably damaged Yahoo!'s corporate image and goodwill.  For at least the foreseeable future, Yahoo! will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Yahoo!'s ability to raise equity capital or debt on favorable terms in the future is now impaired.

## ILLEGAL INSIDER SELLING

61.     While in possession of the undisclosed material adverse information, the Insider Selling Defendants sold the following shares of Yahoo! stock:

| Defendant | Transaction Date | Shares | Avg Price for each day's sales | Proceeds |
|---|---|---|---|---|
| BOSTOCK | 10/21/2004 | 14,000 | $35.61 | $498,594.00 |
| BOSTOCK | 4/26/2005 | 16,360 | $35.32 | $571,432.80 |
| BOSTOCK | 7/26/2005 | 9,000 | $34.01 | $306,090.00 |
| BOSTOCK | 8/15/2005 | 9,511 | $34.83 | $331,268.13 |
| BOSTOCK | 10/28/2005 | 17,934 | $35.26 | $637,807.24 |
|  |  | 66,805 |  | $2,345,192.17 |
|  |  |  |  |  |
| DECKER | 5/24/2004 | 600,000 | $29.41 | $17,656,903.52 |
| DECKER | 9/8/2004 | 200,000 | $30.19 | $6,039,460.82 |
| DECKER | 9/9/2004 | 250,000 | $30.43 | $7,605,177.17 |
| DECKER | 9/10/2004 | 150,000 | $30.68 | $4,600,738.04 |
| DECKER | 5/23/2005 | 300,000 | $37.00 | $11,100,000.00 |
| DECKER | 5/26/2005 | 300,000 | $37.10 | $11,122,343.52 |
| DECKER | 11/2/2005 | 104,167 | $38.03 | $3,959,753.17 |
| DECKER | 11/10/2005 | 104,167 | $38.53 | $4,012,254.75 |
| DECKER | 11/16/2005 | 139,999 | $39.52 | $5,531,398.49 |
| DECKER | 11/17/2005 | 55,000 | $41.05 | $2,257,018.32 |
|  |  | 2,203,333 |  | $73,885,047.80 |
|  |  |  |  |  |
| HIPPEAU | 5/5/2004 | 30,000 | $53.56 | $1,606,800.00 |
| HIPPEAU | 10/26/2004 | 80,000 | $35.08 | $2,806,400.00 |
| HIPPEAU | 4/28/2005 | 50,000 | $34.31 | $1,715,500.00 |
| HIPPEAU | 10/21/2005 | 130,000 | $36.05 | $4,686,500.00 |
| HIPPEAU | 5/23/2006 | 50,000 | $31.28 | $1,564,000.00 |
|  |  | 340,000 |  | $12,379,200.00 |
|  |  |  |  |  |
| KERN | 1/31/2005 | 39,450 | $35.01 | $1,381,850.18 |
| KERN | 2/8/2005 | 71,172 | $34.67 | $2,466,703.40 |
| KERN | 2/24/2005 | 39,450 | $30.83 | $1,210,084.00 |
| KERN | 3/8/2005 | 400 | $32.34 | $12,933.00 |
| KERN | 3/9/2005 | 39,150 | $32.55 | $1,269,569.50 |
| KERN | 3/22/2005 | 39,450 | $31.45 | $1,243,045.00 |
| KERN | 4/19/2005 | 39,550 | $32.89 | $1,300,624.35 |
| KERN | 4/28/2005 | 40,150 | $34.56 | $1,386,064.12 |
| KERN | 5/2/2005 | 39,450 | $34.44 | $1,358,570.98 |
| KERN | 5/24/2005 | 39,450 | $36.78 | $1,452,224.37 |
| KERN | 6/7/2005 | 39,050 | $38.04 | $1,486,415.45 |
| KERN | 6/21/2005 | 700 | $36.91 | $25,837.00 |
| KERN | 6/22/2005 | 38,750 | $37.06 | $1,434,820.31 |
| KERN | 7/18/2005 | 39,450 | $36.59 | $1,443,288.25 |
| KERN | 7/29/2005 | 39,450 | $33.67 | $1,328,375.26 |
| KERN | 8/4/2005 | 39,450 | $34.27 | $1,349,787.50 |
| KERN | 8/23/2005 | 39,050 | $33.00 | $1,290,334.08 |

**SHAREHOLDER DERIVATIVE COMPLAINT**

| Name | Date | Shares | Price | Total |
|------|------|--------|-------|-------|
| KERN | 9/8/2005 | 39,450 | $33.58 | $1,325,669.56 |
| KERN | 9/27/2005 | 39,450 | $32.41 | $1,277,967.07 |
| KERN | 10/20/2005 | 39,450 | $35.71 | $1,403,024.01 |
| KERN | 10/26/2005 | 39,450 | $35.38 | $1,399,784.00 |
| KERN | 11/8/2005 | 39,450 | $38.15 | $1,506,671.00 |
| KERN | 11/15/2005 | 39,450 | $38.08 | $1,504,123.30 |
| KERN | 12/8/2005 | 39,450 | $40.27 | $1,587,919.50 |
| KERN | 12/15/2005 | 39,732 | $41.51 | $1,648,451.60 |
| | | 939,454 | | $33,094,136.79 |
| | | | | |
| KOTICK | 4/22/2004 | 5,400 | $57.61 | $311,083.00 |
| KOTICK | 7/27/2004 | 11,150 | $29.24 | $326,067.76 |
| KOTICK | 10/27/2005 | 34,104 | $35.80 | $1,217,079.84 |
| KOTICK | 4/21/2006 | 24,205 | $33.33 | $806,850.62 |
| | | 74,859 | | $2,661,081.22 |
| | | | | |
| KOZEL | 4/12/2004 | 11,300 | $55.03 | $621,792.68 |
| KOZEL | 10/29/2005 | 28,500 | $45.64 | $1,033,311.00 |
| KOZEL | 2/7/2005 | 28,000 | $41.11 | $973,270.00 |
| KOZEL | 4/22/2005 | 25,000 | $38.56 | $871,694.60 |
| KOZEL | 10/21/2005 | 27,250 | $38.31 | $964,638.00 |
| | | 120,050 | | $4,464,706.28 |
| | | | | |
| SEMEL | 4/12/2004 | 1,500,000 | $55.19 | $82,795,750.00 |
| SEMEL | 4/15/2004 | 220,000 | $54.55 | $11,992,000.00 |
| SEMEL | 4/16/2004 | 280,000 | $54.46 | $15,246,520.00 |
| SEMEL | 7/13/2004 | 1,632,500 | $30.38 | $49,586,125.00 |
| SEMEL | 7/14/2004 | 367,500 | $30.51 | $11,211,125.00 |
| SEMEL | 7/27/2004 | 1,000,000 | $29.95 | $29,949,250.00 |
| SEMEL | 10/19/2004 | 900,000 | $35.27 | $31,685,525.00 |
| SEMEL | 10/20/2004 | 167,000 | $34.24 | $5,720,600.00 |
| SEMEL | 10/21/2004 | 1,383,000 | $35.44 | $48,979,250.00 |
| SEMEL | 10/22/2004 | 550,000 | $36.00 | $19,831,275.00 |
| SEMEL | 2/4/2005 | 21,000 | $35.21 | $739,265.00 |
| SEMEL | 2/7/2005 | 2,900 | $35.09 | $101,761.00 |
| SEMEL | 4/20/2005 | 200,000 | $35.15 | $7,029,000.00 |
| SEMEL | 4/22/2005 | 680,000 | $34.97 | $23,787,000.00 |
| SEMEL | 4/25/2005 | 620,000 | $34.86 | $21,617,500.00 |
| SEMEL | 4/26/2005 | 550,000 | $35.21 | $19,348,400.00 |
| SEMEL | 4/27/2005 | 200,000 | $35.05 | $7,010,000.00 |
| SEMEL | 5/4/2005 | 750,000 | $35.25 | $26,442,100.00 |
| SEMEL | 7/26/2005 | 200,000 | $34.15 | $6,834,785.50 |
| SEMEL | 7/27/2005 | 200,000 | $34.28 | $6,854,000.00 |
| SEMEL | 8/19/2005 | 542,886 | $34.34 | $18,627,730.20 |
| SEMEL | 10/24/2005 | 913,150 | $35.18 | $32,125,675.54 |
| SEMEL | 10/25/2005 | 639,218 | $35.20 | $22,465,240.68 |

SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| SEMEL | 10/26/2005 | 447,632 | $35.31 | $15,829,436.94 |
| SEMEL | 10/27/2005 | 500,000 | $35.43 | $17,709,601.35 |
| SEMEL | 10/28/2005 | 500,000 | $35.62 | $17,799,383.94 |
| SEMEL | 2/15/2006 | 400,000 | $33.21 | $13,273,718.88 |
| SEMEL | 2/16/2005 | 100,000 | $33.28 | $3,328,791.72 |
| SEMEL | 2/17/2006 | 200,000 | $33.08 | $6,614,227.24 |
| SEMEL | 2/21/2006 | 50,000 | $33.02 | $1,650,684.95 |
| SEMEL | 2/22/2006 | 250,000 | $33.07 | $8,262,103.82 |
| | | 15,966,786 | | $584,447,826.76 |
| | | | | |
| WILSON | 11/12/2004 | 23,600 | $38.00 | $896,800.00 |
| | | | | |
| YANG | 5/25/2005 | 400,000 | $36.27 | $14,496,261.65 |
| | | | | |
| TOTAL: | | 20,134,887 | | $728,670,252.67 |

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

62.    Plaintiff brings this action derivatively in the right and for the benefit of Yahoo! to redress injuries suffered, and to be suffered, by Yahoo! as a direct result of the breaches of fiduciary duty, waste of corporate assets and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. Yahoo! is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

63.    Plaintiff will adequately and fairly represent the interests of Yahoo! in enforcing and prosecuting its rights.

64.    Plaintiff is and was an owner of the stock of Yahoo! during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

65.    The current Board of Yahoo! consists of the following ten individuals: defendants Semel, Yang, Bostock, Burkle, Hippeau, Joshi, Kern, Kotick, Kozel and Wilson. Plaintiff has not made any demand on the present Board of Yahoo! to institute this action because such a demand would be a futile, wasteful and useless act.

66.    As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, each of the defendants knew the adverse non-public information regarding the Company's business prospects.  While in possession of this material adverse non-public information regarding the Company, the following current members of the Yahoo! Board participated in the illegal insider selling:

(a)    During the Relevant Period, while in possession of adverse non-public information, Semel sold 15,966,786 shares of Yahoo! stock for proceeds of $585,447,826.76;

(b)    During the Relevant Period, while in possession of adverse non-public information, Kern sold 939,454 shares of Yahoo! stock for proceeds of $33,094,136.79;

(c)    During the Relevant Period, while in possession of adverse non-public information, Yang sold 400,000 shares of Yahoo! stock for proceeds of $14,496,261.65;

(d)    During the Relevant Period, while in possession of adverse non-public information, Hippeau sold 340,000 shares of Yahoo! stock for proceeds of $12,379,200;

(e)    During the Relevant Period, while in possession of adverse non-public information, Kozel sold 120,050 shares of Yahoo! stock for proceeds of $4,464,706.28;

(f)    During the Relevant Period, while in possession of adverse non-public information, Kotick sold 74,859 shares of Yahoo! stock for proceeds of $2,661,081.22;

(g)    During the Relevant Period, while in possession of adverse non-public information, Bostock sold 66,805 shares of Yahoo! stock for proceeds of $2,345,192.17;

**SHAREHOLDER DERIVATIVE COMPLAINT**

1        (h)    During the Relevant Period, while in possession of adverse non-

2  public information, Wilson sold 23,600 shares of Yahoo! stock for proceeds of

3  $896,800.

4       Because these defendants received a personal financial benefit from the

5  challenged insider trading transactions, these defendants are interested.  Moreover,

6  these defendants face a sufficiently substantial threat of liability for breach of their

7  fiduciary duties for insider selling.  Since these directors have breached their

8  fiduciary duties and are interested, any demand upon them is futile.

9      67.    Yahoo! generates a substantial portion all of its revenues from its

10  internet advertising services—the most important aspect of its business.  Thus,

11  defendants Semel, Yang, Bostock, Burkle, Hippeau, Joshi, Kern, Kotick, Kozel and

12  Wilson had a duty to be knowledgeable of the Company's advertising services,

13  including the Company's promotion and delivery of those services to its customers.

14  Despite this duty, these defendants caused or allowed the Company to fail to

15  adequately perform advertising services for its customers, thus jeopardizing critical

16  customer relations.  Moreover, these defendants caused or allowed the Company to

17  issue the improper statements alleged above.  Therefore, demand is futile as to

18  defendants Semel, Yang, Bostock, Burkle, Hippeau, Joshi, Kern, Kotick, Kozel and

19  Wilson because they are interested and face a sufficiently substantial threat of

20  liability to the Company.

21      68.    Defendants Joshi, Kern, Kozel and Wilson were, during the Relevant

22  Period, members of the Audit Committee.  The Audit Committee's charter charges

23  the Audit Committee with reviewing and discussing: (i) the Company's earnings

24  press releases, as well as financial information and earnings guidance provided by

25  the Company to analysts and rating agencies; and (ii) the Company's internal

26  controls.  Thus, the Audit Committee was responsible for overseeing and directly

27  participating in Yahoo!'s financial reporting process.  Accordingly, defendants

28  Joshi, Kern, Kozel and Wilson breached their fiduciary duties of due care, loyalty,

SHAREHOLDER DERIVATIVE COMPLAINT

1  and good faith because the Audit Committee participated in the preparation of
2  improper financial statements and earnings press releases that contained false and/or
3  misleading material information. Particularly, these defendants reviewed and failed
4  to correct Yahoo!'s improper earnings press releases and interim and annual
5  financial statements described above. Thus, defendants Joshi, Kern, Kozel and
6  Wilson face a sufficiently substantial likelihood of liability for their breach of
7  fiduciary duties any demand upon them is futile.

8      69.  The principal professional occupation of defendant Semel is his
9  employment with Yahoo!, pursuant to which he received and continues to receive
10  substantial monetary compensations and other benefits. Specifically, Yahoo! paid
11  Semel the following compensation during the Relevant Period:

| Year | Salary | Restricted Stock Awards | Stock Awards | Option Awards | Options | Misc. |
|------|--------|-------------------------|--------------|---------------|---------|-------|
| 2006 | $250,001 | - | $2,895,833 | $36,678,679 | - | $125 |
| 2005 | $600,000 | $8,687,500 | - | - | 3,300,000 | $1,980 |
| 2004 | $600,000 | - | - | - | 7,200,000 | $1,980 |

16  Accordingly, Semel lacks independence from defendants, Bostock, Burkle and
17  Kern, defendants who are not disinterested and/or independent and who exert
18  influence over Semel's compensation by virtue of their positions as members of the
19  Compensation Committee. The Compensation Committee has the authority to
20  review Semel's compensation. This lack of independence renders Semel incapable
21  of impartially considering a demand to commence and vigorously prosecute this
22  action.

23      70.  Because the members of the Compensation Committee singularly
24  control the other defendants' awards, the remaining members of the Board will not
25  institute this action against defendants Bostock, Burkle and Kern. To do so would
26  jeopardize each defendant's personal financial compensation. Thus, demand on
27  defendants Semel, Yang, Hippeau, Joshi, Kotick, Kozel and Wilson is futile.

28

SHAREHOLDER DERIVATIVE COMPLAINT

71.    Each of the key officers and directors knew of and/or directly benefited from the wrongdoing complained of herein.

72.    The Director Defendants of Yahoo!, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Yahoo!'s stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties.

73.    In order to bring this suit, all of the directors of Yahoo! would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand.

74.    The acts complained of constitute violations of the fiduciary duties owed by Yahoo!'s officers and directors and these acts are incapable of ratification.

75.    Each of the Director Defendants of Yahoo! authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them.

76.    Any suit by the current directors of Yahoo! to remedy these wrongs would likely expose the Individual Defendants and Yahoo! to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

77.    Yahoo! has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Yahoo! any part of the damages Yahoo! suffered and will suffer thereby.

SHAREHOLDER DERIVATIVE COMPLAINT

78. If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants. In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions. This they will not do. Thus, demand is futile.

79. If Yahoo!'s current and past officers and directors are protected against personal liability for their acts of mismanagement, and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Yahoo!. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by Yahoo! against these defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Yahoo!, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all then the current directors will not cause Yahoo! to sue them, since they will face a large uninsured liability.

80. Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and

-41-

1 | refused to seek to recover for Yahoo! for any of the wrongdoing alleged by plaintiff
2 | herein.

3 | 81.    A true and correct copy of this Complaint was delivered to Yahoo!
4 | prior to its being filed with this Court.

## FIRST CAUSE OF ACTION

### Derivatively Against the Officer Defendants for Violation of §10(b) of the 1934 Act and Rule 10b-5 Promulgated Thereunder

82.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

83.    During the Relevant Period, the Officer Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

84.    The Insider Selling Defendants also sold as set forth herein, receiving ill gotten gains while in possession of material non-public information.  These defendants misappropriated Yahoo!'s proprietary information and violated their so-called "abstain or disclose" duties under the federal securities laws when they sold Yahoo! stock without disclosing the information alleged to have been concealed herein.

85.    During the Relevant Period, at the same time the price of the Company's common stock was inflated by the Officer Defendants' misstatements as alleged herein, and the Insider Selling Defendants were selling stock into the market as alleged herein, the Individual Defendants caused Yahoo! to repurchase hundreds of millions of dollars worth of its own stock on the open market at inflated prices.

86.    During the Relevant Period each of the Officer Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)    Employed devices, schemes and artifices to defraud;

-42-

**SHAREHOLDER DERIVATIVE COMPLAINT**

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices and a course of business that operated as a fraud or deceit upon Yahoo! in connection with Yahoo!'s purchases of Yahoo! common stock during the Relevant Period.

87.     As a result of the Officer Defendants' misconduct, Yahoo! has and will suffer damages in that it paid artificially inflated prices for Yahoo! common stock purchased on the open market. Yahoo! would not have purchased Yahoo! common stock at all, or at the inflated prices it paid, had the market been aware that the price of Yahoo!'s stock was artificially and falsely inflated by the Officer Defendants' misleading statements. As a direct and proximate result of these defendants' wrongful conduct, Yahoo! suffered damages in connection with its purchases of Yahoo! common stock during the Relevant Period. By reason of such conduct, the Officer Defendants are liable pursuant to §10(b) of the 1934 Act and SEC Rule 10b-5 promulgated thereunder.

## SECOND CAUSE OF ACTION

### Against the Insider Selling Defendants for Violation of California Corporations Code §25402

88.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

89.     At the time that the Insider Selling Defendants sold their Yahoo! common stock as set forth herein, by reason of their high executive and/or directorship positions with Yahoo!, the Insider Selling Defendants had access to highly material information regarding the Company, including the information set forth herein regarding the true adverse facts of Yahoo!'s improper financial reporting.

-43-

90.     At the time of such sales, that information was not generally available to the public or the securities markets. Had such information been generally available, it would have significantly reduced the market price of Yahoo! shares at that time.

91.     The Insider Selling Defendants, and each of them, had actual knowledge of material, adverse, non-public information and thus sold their Yahoo! common stock in California in violation of California Corporations Code §25402.

92.     Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants, and each of them, are liable to Yahoo! for damages in an amount up to three times the difference between the price at which Yahoo! common stock was sold by the defendants, and each of them, and the market value which that Yahoo! common stock would have had at the time of the sale if the information known to the defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

## THIRD CAUSE OF ACTION

### Against the Director Defendants for Violation of California Corporations Code §25403

93.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

94.     The Director Defendants, through their positions, possessed control and influence over the Insider Selling Defendants' sale of Yahoo! common stock in violation of the California Corporations Code. The Director Defendants are statutorily liable to the same extent as the Insider Selling Defendants under California Corporations Code §25403.

95.     The Director Defendants were aware of the Insider Selling Defendants' knowledge of the material adverse non-public information and the Director Defendants were aware of the Insider Selling Defendants' intent to sell Yahoo! common stock while in possession material adverse non-public information.

-44-

96.     The Director Defendants are culpable for the Insider Selling Defendants' underlying violations of California Corporations Code §25402 because of their knowledge and ability to control and influence the Insider Selling Defendants.

97.     Under California Corporations Code §25403, the Director Defendants, and each of them, are liable to Yahoo! for damages in an amount up to three times the difference between the price at which Yahoo! common stock was sold by the Insider Selling Defendants, and each of them, and the market value which Yahoo! common stock would have had at the time of the sale if the information known to the Individual Defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

## FOURTH CAUSE OF ACTION

### Against All Defendants for Breach of Fiduciary Duty
### for Improper Financial Reporting

98.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

99.     The Individual Defendants owed and owe Yahoo! fiduciary obligations. By reason of their fiduciary relationships, the Officer Defendants and Director Defendants owed and owe Yahoo! the highest obligation of good faith, fair dealing, loyalty and due care.

100.    The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

101.    Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results of the Company and failed to correct the Company's publicly reported financial results and guidance. These actions could not have been a good

-45-

1  faith exercise of prudent business judgment to protect and promote the Company's
2  corporate interests.

3      102.   As a direct and proximate result of the Individual Defendants' failure to
4  perform their fiduciary obligations, Yahoo! has sustained significant damages.  As a
5  result of the misconduct alleged herein, the Individual Defendants are liable to the
6  Company.

7      103.   Plaintiff on behalf of Yahoo! has no adequate remedy at law.

8                          **FIFTH CAUSE OF ACTION**

9       **Against the Insider Selling Defendants for Breach of Fiduciary
        Duties for Insider Selling and Misappropriation of Information**
10

11     104.   Plaintiff incorporates by reference and realleges each and every
12  allegation set forth above, as though fully set forth herein.

13     105.   At the time of the stock sales set forth herein, the Insider Selling
14  Defendants knew the information described above, and sold Yahoo! common stock
    on the basis of such information.
15

16     106.   The information described above was proprietary non-public
17  information concerning the Company's financial condition and future business
18  prospects.  It was a proprietary asset belonging to the Company, which the Insider
    Selling Defendants used for their own benefit when they sold Yahoo! common
19
    stock.
20

21     107.   At the time of their stock sales, the Insider Selling Defendants knew
22  that the Company's revenues were materially overstated.  The Insider Selling
23  Defendants' sales of Yahoo! common stock while in possession and control of this
24  material adverse, non-public information was a breach of their fiduciary duties of
    loyalty and good faith.
25

26     108.   Since the use of the Company's proprietary information for their own
27  gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the

28

                                    -46-
                          SHAREHOLDER DERIVATIVE COMPLAINT

1  Company is entitled to the imposition of a constructive trust on any profits the
2  Insider Selling Defendants obtained thereby.

### SIXTH CAUSE OF ACTION

#### Against All Defendants for Breach of Fiduciary Duty

5      109.   Plaintiff incorporates by reference and realleges each and every
6  allegation contained above, as though fully set forth herein.

7      110.   The Individual Defendants' misconduct alleged herein constituted a
8  breach of their fiduciary duties to Yahoo! for abuse of control, gross
9  mismanagement, and waste of corporate assets, for which they are legally
10 responsible.

11     111.   As a direct and proximate result of the Individual Defendants' breaches,
12 Yahoo! has sustained significant damages.

13     112.   As a result of the misconduct alleged herein, the Individual Defendants
14 are liable to the Company.

15     113.   Plaintiff on behalf of Yahoo! has no adequate remedy at law.

### SEVENTH CAUSE OF ACTION

#### Against All Defendants for Unjust Enrichment

18     114.   Plaintiff incorporates by reference and realleges each and every
19 allegation set forth above, as though fully set forth herein.

20     115.   By their wrongful acts and omissions, defendants were unjustly
21 enriched at the expense of and to the detriment of Yahoo!.

22     116.   Plaintiff, as a shareholder and representative of Yahoo!, seeks
23 restitution from these defendants, and each of them, and seeks an order of this Court
24 disgorging all profits, benefits and other compensation obtained by these defendants,
25 and each of them, from their wrongful conduct and fiduciary breaches.

### PRAYER FOR RELIEF

27 WHEREFORE, plaintiff demands judgment as follows:
28     1.     Against all of the Individual Defendants and in favor of the Company

SHAREHOLDER DERIVATIVE COMPLAINT

1  for the amount of damages sustained by the Company as a result of the Individual

2  Defendants' fraud, breaches of fiduciary duties, and unjust enrichment;

3       2.     Determining and awarding Yahoo! treble damages pursuant to

4  California Corporations Code §25502.5(a) for the Insider Selling Defendants'

5  violations of California Corporations Code §25402;

6       3.     Determining and awarding Yahoo! treble damages against the Director

7  Defendants pursuant to California Corporations Code §25403;

8       4.     Directing Yahoo! to take all necessary actions to reform and improve

9  its corporate governance and internal procedures to comply with applicable laws and

10  to protect Yahoo! and its shareholders from a repeat of the damaging events

11  described herein, including, but not limited to, putting forward for shareholder vote

12  resolutions for amendments to the Company's By-Laws or Articles of Incorporation

13  and taking such other action as may be necessary to place before shareholders for a

14  vote the following Corporate Governance Policies:

15       •     a proposal to strengthen the Board's supervision of operations and

16             develop and implement procedures for greater shareholder input into

17             the policies and guidelines of the Board;

18       •     control and limit insider stock selling;

19       •     a provision to permit the shareholders of Yahoo! to nominate at least

20             three candidates for election to the Board;

21       •     a proposal to ensure the accuracy of the qualifications of Yahoo!'s

22             directors, executives and other employees;

23       •     a proposal to strengthen the Company's procedures for the receipt,

24             retention and treatment of complaints received by the Company

25             regarding accounting, internal controls and auditing matters; and

26       •     appropriately test and then strengthen the internal audit and control

27             functions.

28

**SHAREHOLDER DERIVATIVE COMPLAINT**

5.     Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Yahoo! has an effective remedy;

6.     Awarding to Yahoo! restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

7.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

8.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: June __, 2007

                JOHNSON BOTTINI, LLP

                By _____
                      FRANK J. JOHNSON
                      FRANCIS A. BOTTINI, JR.
                      Attorneys for Plaintiff

1                             **VERIFICATION**

2         I hereby verify that I am a shareholder of Yahoo! Inc. (the "Company"), and am

3 ready, willing, and able to pursue this action in the hope of improving the Company and

4 recovering damages for the Company caused by defendants' conduct. I have reviewed

5 the allegations made in this Derivative Complaint and to those allegations of which I

6 have personal knowledge I believe those allegations to be true. As to those allegations

7 of which I do not have personal knowledge, I rely upon my counsel and their

8 investigation and believe them to be true. Having received a copy of this Complaint,

9 having reviewed it with my counsel, I hereby authorize its filing.

10 Date:    6/13/07

11                                   Jill Watkins

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHAREHOLDER DERIVATIVE COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge A. Howard Matz and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

## CV07- 3882 AHM (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) JILL WATKINS | DEFENDANTS TERRY S. SEMEL, SUSAN L. DECKER, ARTHUR H. KERN, JERRY YANG, et al., and Nominal Defendant YAHOO! INC., a Delaware Corp. |
|---|---|
| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): Belmont, California | County of Residence of First Listed Defendant (in U.S. Plaintiff Cases Only): |
| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) JOHNSON BOTTINI, LLP 655 WEST BROADWAY, SUITE 1400 SAN DIEGO, CALIFORNIA 92101 TEL: (619) 230-0063 FAX: (619) 233-5535 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No  ☐ **MONEY DEMANDED IN COMPLAINT:** $ PER PROOF

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. SECTION 78aa. FRAUD IN CONNECTION WITH SALE OF SECURITIES.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☑ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No  ☐ Yes

If yes, list case number(s):

FOR OFFICE USE ONLY:  Case Number:

| CV-71 (07/05) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

### AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☐ No ☑ Yes

If yes, list case number(s): 2:06-CV-2737 CAS (FMOx); 2:07-CV-03125-CAS (FMOx); and 2:05-CV-04588-CAS (FMOx)

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☑ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.
   BELMONT, CALIFORNIA

List the California County, or State if other than California, in which EACH named defendant resides. (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.
   YAHOO!, INC.: SUNNYVALE, CALIFORNIA

List the California County, or State if other than California, in which EACH claim arose. (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.
   PASADENA, CALIFORNIA AND SANTA CLARA, CALIFORNIA

**X. SIGNATURE OF ATTORNEY (OR PRO PER):**  _[signature]_                Date 6/14/07

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |